630 A.2d 541

## PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant,

v.

## BOOTS & BONNET, INC.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 28, 1993.

Decided Aug. 10, 1993.

James A. Saylor, Asst. Counsel, for appellant.

Francis R. Lord, for appellee.

Before CRAIG, President Judge, and PALLADINO, J., and KELTON, Senior Judge.

PALLADINO, Judge.

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals an order of the Court of Common Pleas of Delaware County (trial court) which reversed the decision of the Pennsylvania Liquor Control Board (Board) which affirmed an order of the Administrative Law Judge (ALJ) imposing a fine of $400 on Boots & Bonnet, Inc. (Licensee) and revoking its Sunday Sales Permit. We reverse the order of the trial court and reinstate the $400 fine and the revocation of the Sunday Sales Permit.

.

This case arises out of a citation issued by the Bureau, charging Licensee with furnishing false information on its renewal application for a Sunday Sales Permit. The charges were brought pursuant to the provisions of Section 406(a)(3) of the Liquor Code (Code), Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–406(a)(3) and Section 11.172 of the Pennsylvania Liquor Control Board Regulations, 40 Pa.Code § 11.172.[1]

At a hearing concerning the citation, the ALJ found the following facts.

Licensee applied for renewal of a Sunday Sales Permit relying on a certification period from July 1, 1987 to June 30, 1988. On the application, Licensee reported sales of food and non-alcoholic beverages totaling $31,985.08 and sales of food and alcoholic beverages totaling $74,296.93. The application indicated 43.1% of the combined gross sales of food and alcoholic beverages was comprised of food and non-alcoholic beverages.

The Bureau, after examining the records of the Licensee, including beer, liquor and food purchase invoices, determined that Licensee had purchased alcoholic beverages totaling $99,-000.00 during the certification period in question. The Bureau, then made its own computation of sales from alcoholic beverages, using the price of drinks at the licensed premises, a 10% spillage allowance and an assumption that there was no inventory at the beginning of the certification period. The Bureau also made an ending inventory allowance of $7,500,

1. Section 406(a)(3) provides, in pertinent part, that "restaurant licencees whose sales of food and nonalcoholic beverages are equal to forty per centum or more of the combined gross sales of both food and alcoholic beverages may sell liquor and malt or brewed beverages on Sunday between the hours of eleven o'clock antemeridian and two o'clock antemeridian Monday upon purchase of a special permit from the board ..."

Section 11.172(a)(4) reiterates what is stated above and also, in pertinent part, states that "[a] licensee who wishes to make Sunday sales of alcoholic beverages shall file an application ... certified [by] a public accountant ... [stating that the licensee maintain the above required sales] for a period not less than 90–consecutive days during the 12 months immediately preceding the date of application ..."

based upon Licensee's records of inventory on hand. By this method, sales of alcoholic beverages totaled $224,843.72. When Licensee's total of food and non-alcoholic beverage sales of $31,985.08 was used to compute the ratio, the Bureau determined that the ratio of alcoholic beverage and food sales to non-alcoholic beverage and food sales was only 12.45% and therefore, issued a citation. After the hearing, the ALJ concluded that Licensee had furnished false information on its renewal application and also did not meet the minimum 40% ratio required by the Code.

On appeal, the Board affirmed the ALJ's decision. Licensee then appealed to the trial court which found, without taking any additional evidence, that the record did not contain substantial evidence to support the ALJ's determination.

■ On appeal to this Court,[2] the issue is whether the record contains substantial evidence to support the ALJ's finding that the Licensee falsified its application for a Sunday Sales Permit and whether it failed to meet the minimum 40% ratio required by the Code.

■ The Bureau contends that there was substantial evidence to support the ALJ's determination. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Ryan v. Unemployment Compensation Board of Review,* 120 Pa.Commonwealth Ct. 80, 547 A.2d 1283 (1988).

On its renewal application, Licensee provided the amounts of $31,985.08 for food and non-alcoholic beverages and $74,-286.93 for food and alcoholic beverages to comprise a gross sales ratio of 43.1%. In order to verify Licensee's application, the Bureau examined the alcohol purchase invoices and determined that the liquor purchases for the certification period

2. Our scope of review, where the trial court takes no additional evidence, is limited to determining whether the administrative law judge's findings of fact are supported by substantial evidence and whether the administrative law judge committed an error of law or abused her discretion. *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. Liberty Society of Erie,* 154 Pa.Commonwealth Ct. 152, 623 A.2d 391 (1993).

were $99,000.00. The Bureau then multiplied the total alcohol purchases times the price of drinks, which was supplied by Licensee, to determine the probable sales of alcohol for that time period.

Before determining the projected total sales, the Bureau gave Licensee certain allowances. First, the Bureau assumed that there was no beginning inventory, which was beneficial to Licensee since it is unlikely that a bar would open without any alcohol. Second, the Bureau made a 10% spillage allowance. Third, in an effort to determine an ending inventory, the Bureau used the figure of $3,000, given by Licensee, and estimated it to be $7,500.[3] The Bureau approximated this figure based upon Licensee's general inventory. A certain amount of statistical imprecision is inevitable, and certain hypotheses must at times be utilized. *Bennett's Dew Drop Inn, Inc. v. Pennsylvania Liquor Control Board*, 18 Pa.Commonwealth Ct. 586, 337 A.2d 295 (1975).

After making all of these allowances, the Bureau determined that the total alcohol sales were $224,843.71. Utilizing the $31,985.08 for food and non-alcoholic beverages sales supplied by Licensee on its renewal application, the Bureau computed the ratio of non-alcoholic beverage and food sales to alcoholic beverage and food sales to be 12.45%.

Throughout its computations, the Bureau gave Licensee every advantage to achieve the required ratio. However, the Bureau's figure still did not come close to the 40% minimum.

Therefore, we conclude that the ALJ did not abuse her discretion since there was substantial evidence in the record to support the determination that Licensee had furnished false information on its renewal application and had not met the minimum 40% ratio required to obtain a Sunday Sales Permit.

Accordingly, we reverse the order of the trial court and reinstate the penalties imposed by the ALJ.

---

3. In its brief, Licensee contends that this figure is inaccurate. However, Licensee can hardly dispute it since it supplied the figure and since the Bureau rounded it up to the Licensee's advantage.

## ORDER

AND NOW, August 10, 1993, the order of the Court of Common Pleas of Delaware County in the above-captioned matter is reversed, and the fine of four hundred dollars ($400) and the revocation of the Sunday Sales Permit are reinstated.