IN THE COMMONWEALTH COURT OF PENNSYLVANIA

El Mariachi Mexican Restaurant, LLC   :
    :
       v.       : No.  837 C.D. 2023
    : Submitted: May 7, 2024
Pennsylvania Liquor Control Board,   :
               Appellant  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE               FILED:  June 4, 2024


      The Pennsylvania Liquor Control Board (PLCB) appeals an order of the Court of Common Pleas of Cumberland County (trial court) that reversed the PLCB's decision to deny El Mariachi Mexican Restaurant, LLC's (Applicant) application for an Economic Development Restaurant Liquor License (EDR License).[1] The PLCB argues the trial court erred by holding that Applicant satisfied the requirements for an EDR License as set forth in the Liquor Code[2] and the PLCB's regulations. After review, we affirm.

---

[1] The PLCB may issue an EDR License notwithstanding quota restrictions, explained *infra*, for the purpose of economic development. *See* Section 461(b.1) of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4-461(b.1).

[2] Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. §§ 1-101 - 10-1001.

## BACKGROUND

In June 2021, Applicant applied for an EDR License for its restaurant located at 40 Shippensburg Shopping Center, Suite 21, in Shippensburg, Pennsylvania. Reproduced Record (R.R.) at 52a. By letter dated October 5, 2021, the PLCB's Bureau of Licensing (Bureau) notified Applicant it would hold a hearing to address the PLCB's objections to its application, specifically indicating:

> 1. The [PLCB] shall take evidence to determine whether [Applicant] exhausted reasonable means in an effort to find a suitable license within the current county quota scheme, in accordance with Section 3.105 of the [PLCB's] Regulations.
>
> 2. The [PLCB] shall take evidence to determine that the approval of this application will not adversely affect the health, welfare, peace and morals of the neighborhood within a radius of 500 feet of the proposed licensed premises.

R.R. at 55a-57a.

The PLCB hearing examiner conducted two hearings in this matter, one on December 21, 2021, and one on February 25, 2022.[3] Jose Luis Olvera Hernandez (Mr. Olvera), one of Applicant's owners, testified at both hearings. At the second hearing, Applicant's counsel, Jan Sulcove, Esquire (Counsel), who served as Applicant's agent in attempting to procure a license, testified. After the hearings, the hearing examiner recommended denying the EDR License. *Id.* at 215a. By order dated September 21, 2022, the PLCB refused Applicant's EDR License application. *Id.* at 229a. The PLCB concluded that although approval of Applicant's application

---

[3] During the first hearing, Applicant's counsel, Jan Sulcove, Esquire (Counsel), attempted to testify regarding his efforts to procure a license for Applicant as Applicant's agent. R.R. at 33a-48a. Because Counsel represented Applicant at the hearing, the hearing examiner did not permit Counsel to testify as a fact witness. *Id.* The PLCB hearing examiner held a second hearing during which substitute counsel took over representation and Counsel testified. *Id*. at 102a-31a.

would not adversely affect the health, welfare, peace, and morals of the neighborhood within a 500-foot radius of the premises, Applicant failed to exhaust reasonable means to find a restaurant liquor license within the current county quota scheme. PLCB's Op. at 22. Applicant appealed to the trial court.

The trial court conducted a *de novo* trial. R.R. at 232a-308a. The trial court accepted the record of the administrative proceedings, and the following individuals testified on behalf of Applicant: Counsel; Stephen Dopson, Applicant's accountant (Accountant); Mr. Olvera; and Heather Olvera, Mr. Olvera's wife, and Applicant's co-owner (Ms. Olvera) (collectively, the Olveras).

During his testimony, Accountant explained he was familiar with Applicant's business organization as he assisted in setting up the company. *Id.* at 244a. At the end of 2021, Applicant had approximately $28,328 in capital, and did not have any assets to serve as collateral for a business loan. *Id.* at 247a. Accountant prepared balance sheets reflecting Applicant's bank statements, invoices, and check register at the end of every month, and presented an income statement reflecting a net income of approximately $190,000 for the year 2021. *Id.* at 248a. Accountant testified that based on his review of Applicant's financial records, Applicant could not afford to pay $600,000 for a liquor license out of its assets. *Id.* at 250a.

In his testimony, Counsel described his efforts to secure a license for Applicant. Counsel explained the Olveras contacted him in April 2021, for help obtaining a liquor license. *Id.* at 259a-60a. After obtaining approval from the Board of Supervisors of Shippensburg Township, Counsel began the process of contacting active license holders and holders of licenses in safekeeping[4] with the PLCB by sending letters requesting the recipients contact him if they had any interest in selling

---

[4] Where a licensee's operations cease for 15 consecutive days or more, its license may be held in safekeeping and become available when its operations resume. *See* 40 Pa. Code § 7.31.

their licenses. *Id.* at 261a. Counsel contacted "substantially over 50%" of the entities listed on the PLCB's records as being owners of the licenses, but received only one response, which was from Todd Meals (Meals), an officer and director of Scalles, Inc. (Scalles). *Id.*

As a result of that contact, Counsel researched the average price paid for a license through the PLCB's auction process, as well as information available on the internet from brokers who sold licenses. *Id.* at 263a-64a. Based on his research, Counsel calculated an average purchase price to be approximately $67,209. *Id.* at 263a. Counsel met with the Olveras, and they permitted him to send Meals an offer of $67,209 for Scalles' liquor license, expecting to begin negotiations. *Id.* at 265a. However, Meals responded that Scalles was not interested and did not begin negotiations. *Id.* Counsel researched the average cost of purchasing a liquor license on the marketplace, which he found to be between $550,000 and $650,000. *Id.*

Mr. Olvera testified the Olveras went to F&M Bank to obtain a $600,000 business loan, but the bank denied the loan because Applicant did not have enough cash flow. *Id.* at 288a. Applicant admitted the denial letter from F&M Bank. *Id.* Similarly, Ms. Olvera testified F&M Bank expressed there was no way it would offer a loan, and explained it is very difficult to get a bank to approve the amount the PLCB requires for licenses. *Id.* at 293a-94a. Additionally, the Olveras went to M&T Bank, the holder of Applicant's business bank accounts, but the bank would not offer a business loan for a liquor license. *Id.* During Ms. Olvera's testimony, she explained the M&T Bank loan officer indicated Applicant did not yet have sufficient cash flow to support a $600,000 loan having just opened in 2020. *Id.* at 293a. Mr. Olvera testified Applicant could not have purchased a liquor license for $600,000. *Id.*

4

At the conclusion of the hearing, the trial court sustained Applicant's appeal, directing the PLCB to issue the EDR License to Applicant. Based on the evidence presented, the trial court found Applicant provided sufficient evidence to demonstrate that Counsel made contact with over 50% of the relevant liquor license holders in the county, and that only one responded. *Id.* at 306a. Applicant made an offer of $67,209, which while well below market price, was a price Applicant could afford. *Id.* The trial court noted Applicant provided an accounting of its 2021 capital financial resources, as well as current and projected revenue and expenses, and the trial court found Applicant attempted to get a loan but was rejected. *Id.* The trial court concluded:

> The only question for [the trial court] is whether [Applicant] exhausted reasonable means to obtain a license from the [marketplace] in that its offer was well below the open [marketplace] price.
>
> The [trial court] finds that [Applicant] has exhausted reasonable means because [Applicant] offered on the open market[place] what the [Applicant] could afford and in keeping with the purpose of the [EDR License], the [PLCB] is overruled and shall grant [Applicant] a[n] [EDR License].

*Id.* at 306a-07a.

The PLCB filed its notice of appeal on July 26, 2023. The trial court subsequently issued an opinion under Pennsylvania Rule of Appellate Procedure (Rule) 1925(a), Pa.R.A.P. 1925(a) (1925(a) Opinion). In its 1925(a) Opinion, the trial court explained it found Applicant exhausted reasonable means of purchasing a regular restaurant liquor license because Applicant offered on the open marketplace what it could afford. *Id.* at 7. Relying on this Court's decision in *Myles Development Company, LLC v. Pennsylvania Liquor Control Board*, 224 A.3d 1119, 1127 (Pa. Cmwlth. 2020), the trial court explained:

5

> [W]e cannot expect an applicant to engage in an exercise in futility in order to obtain a license. It seems contradictory to require an applicant to offer an asking price of which it [cannot] afford. Applicant's owner, former attorney, and accountant all credibly testified that purchasing a regular restaurant license on the marketplace was not financially feasible for Applicant. Additionally, Applicant was turned down twice for loans. To demand more seems an exercise in futility. Therefore, there was sufficient evidence to find in favor of Applicant and order the issuance of an [EDR] License.

1925(a) Op. at 15. Additionally, the trial court asserted this Court should quash the PLCB's appeal as it was untimely filed. *Id.* at 8

On appeal, the PLCB argues (1) it timely appealed the trial court's order; (2) the trial court abused its discretion or committed an error of law by interpreting the statutorily imposed condition, "exhausted reasonable means to find a suitable license," to require only a single offer for an amount an applicant can afford, rather than requiring a good faith offer; and (3) the trial court committed an error of law or abused its discretion by failing to base its decision on substantial evidence by finding Applicant was unable to obtain financing to make a market-rate offer for an available license. PLCB's Br. at 4.

In response, Applicant argues this Court should quash the PLCB's appeal because the PLCB failed to timely file its notice of appeal and, thus this Court lacks jurisdiction to address this matter. Applicant's Br. at 1-4. As to the merits, Applicant asserts the trial court's order directing the PLCB to issue it an EDR License should be affirmed because the trial court's conclusion that Applicant exhausted reasonable means to find a suitable license within the existing county quota scheme is supported by substantial evidence. *Id.* at 6. Additionally, Applicant contends the trial court's order should be affirmed because the trial court's conclusion that Applicant was unable to secure a loan or other financing to enable it to afford a liquor license is

6

supported by substantial evidence and the trial court did not err or abuse its discretion in making this determination. *Id.*

## DISCUSSION

### Timeliness

Because a timely appeal is a jurisdictional prerequisite to this Court's exercise of jurisdiction, we must first address the timeliness of the PLCB's appeal. *Monroe Cnty. Bd. of Assessment Appeals v. Miller*, 570 A.2d 1386, 1388 (Pa. Cmwlth. 1990). Rule 903(a) provides a notice of appeal "shall be filed within 30 days after the entry of the order from which the appeal is taken." Pa.R.A.P. 903(a). Under Rule 108, an order is "entered" the day "on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)."[5] Pa.R.A.P. 108. This Court has previously held the 30-day appeal period does not begin until an order is entered by the trial court, and the trial court's order is not "entered" until that order has been entered by the prothonotary on the docket and notice of the order's entry has been given to the parties by the prothonotary. *Gomory v. Dep't of Transp., Bureau of Motor Vehicles*, 704 A.2d 202, 204 (Pa. Cmwlth. 1998). Here, the trial court contends it "entered" its order on June 21, 2023, because it dictated the order in open court with all parties present. 1925(a) Op. at 8. However, the order was not filed on the docket until June 30, 2023, due to a clerical error. *Id.* Moreover, the prothonotary did not provide notice to the parties under Civil Rule 236 until July 6, 2023. R.R. at 312a. Therefore, the trial court's order was entered on July 6, 2023. As such, the PLCB had until August 7, 2023, to file its

---

[5] Pennsylvania Rule of Civil Procedure 236(b) provides: "The prothonotary shall note in the docket the giving of the notice and, when a judgment by confession is entered, the mailing of the required notice and documents." Pa.R.Civ.P. 236(b).

7

notice of appeal.[6]  The PLCB filed its notice of appeal on July 26, 2023, which was before its deadline.  Accordingly, the PLCB timely filed its notice of appeal.

## Merits

We turn to the merits of the PLCB's appeal.  Under Section 464 of the Liquor Code, a trial court conducts *de novo* review of the PLCB's grant or denial of a license.  47 P.S. § 4-464.[7]  A *de novo* review "contemplates an independent evaluation of the evidence." *Domusimplicis, LLC v. Pa. Liquor Control Bd.*, 202 A.3d 836, 841 (Pa. Cmwlth. 2019) (quotation omitted). The trial court "is not restricted to reviewing the established record and may hear new evidence and make independent findings of fact and conclusions of law." *Id.*  So long as the trial court's findings are supported by substantial evidence in the record as a whole, it may reverse the PLCB's decision to deny a license.  *Id.*  We review the trial court's decision to determine whether there is substantial evidence to support its findings or whether the trial court committed an error of law or abused its discretion.  *K&K Enters., Inc. v. Pa. Liquor Control Bd.*, 602 A.2d 476, 478 n.2 (Pa. Cmwlth. 1992).

---

[6] Thirty days from July 6, 2023, would set the filing deadline at August 5, 2023.  However, because August 5, 2023, was a Saturday, the PLCB had until Monday, August 7, 2023, to file its notice of appeal.  *See* 1 Pa.C.S. § 1908.

[7] Section 464 of the Liquor Code provides:

> The court shall hear the application de novo on questions of fact, administrative discretion and such other matters as are involved, at such time as it shall fix, of which notice shall be given to the [PLCB]. The court shall either sustain or over-rule the action of the [PLCB] and either order or deny the issuance of a new license or the renewal or transfer of the license or the renewal of an amusement permit to the applicant.

47 P.S. § 4-464.

Section 461(a) of the Liquor Code[8] imposes a quota system restricting the number of permitted liquor licenses based on a municipality's population. Because Cumberland County has exceeded its quota,[9] the PLCB is generally prohibited from

---

[8] Section 461(a) of the Liquor Code provides:

No additional restaurant, eating place retail dispenser or club licenses shall be issued within a county if the total number of restaurant and eating place retail dispenser licenses is greater than one license for each three thousand inhabitants in the county, except the board may issue licenses to public venues, performing arts facilities, continuing care retirement communities, airport restaurants, municipal golf courses, hotels, privately-owned private golf courses, privately-owned public golf courses, racetracks, automobile racetracks, nonprimary pari-mutuel wagering locations, privately-owned ski resorts and to any other entity which this act specifically exempts from the limitations provided in this section, and the board may issue a license to a club situated in a borough having a population less than eight thousand inhabitants which is located in a county of the second class A whose application is filed on or before February 28, 2001. In addition, the board may issue an eating place retail dispenser license for on-premises sales only to the owner or operator of a facility having a minimum of a one-half mile asphalt track and having a permanent seating capacity of at least six thousand people used principally for holding automobile races, regardless of the number of restaurant and eating place retail dispenser licenses already issued in that county. When determining the number of restaurant and eating place retail dispenser licenses issued in a county for the purposes of this section, licenses exempted from this limitation, licenses subject to the mixed-use town development project provisions of this act, licenses subject to the commercial and mixed-use overlay project provisions of this act, licenses subject to the tourist development project provisions of this act and club licenses shall not be considered. Inhabitants of dry municipalities shall be considered when determining the population in a county. Licenses shall not be issued or transferred into municipalities where such licenses are prohibited pursuant to local referendum in accordance with section 472. Licenses approved for intermunicipal transfer may not be transferred from the receiving municipality for a period of five years after the date that the licensed premises are operational in the receiving municipality.

47 P.S. § 4-461(a).

[9] Cumberland County's retail liquor license quota is 78 licenses. R.R. at 58a. At the time of the hearing, the PLCB's records showed Cumberland County had 88 restaurant liquor licenses and one eating place malt beverage liquor license in effect which also counted against its quota. *Id.*

9

issuing new liquor licenses in the county. *Id.* However, Section 461(b.1) of the Liquor Code allows an exception to the quota for restaurants, in the interest of economic development, which is the EDR License. Under Section 461(b.1) of the Liquor Code, the PLCB can issue an EDR License where specific conditions are met:

> (b.1) The board may issue restaurant and eating place retail dispenser licenses and renew licenses issued under this subsection without regard to the quota restrictions set forth in subsection (a) for the purpose of economic development in a municipality under the following conditions:
>
>> (1) A license may only be issued under this subsection if the applicant has exhausted reasonable means for obtaining a suitable license within the county.
>>
>> (2) The proposed licensed premises must be located within . . . :
>>
>>> . . . .
>>>
>>> (ii) A municipality in which the issuance of a restaurant or eating place retail dispenser license has been approved by the governing body of the municipality for the purpose of local economic development . . . .
>>
>> (3) The board may issue no more than two licenses total in each county of the first through fourth class and no more than one license total in each county of the fifth through eighth class per calendar year.

47 P.S. § 4-461(b.1)(1-3).[10]

Section 3.105 of the PLCB's regulations provides the mandatory criteria an applicant must provide to establish that it has met the Liquor Code's exhaustion of

---

[10] The parties do not dispute Applicant satisfied Section 461(b.1)(2)(ii) of the Liquor Code by obtaining approval from the Board of Supervisors of Shippensburg Township.

reasonable means requirement. 40 Pa. Code § 3.105. Specifically, Section 3.105(e) of the PLCB's regulations provides an applicant's evidence shall include the following:

> (1) Evidence that the applicant, or the applicant's agent, made contact with existing restaurant liquor licensees, if a restaurant liquor economic development license is sought, or existing eating place retail dispenser licensees, if an eating place retail dispenser economic development license is sought, in the county.
>
> > (i) The purpose of the contact is to inquire as to the availability of the licensee's license for purchase.
> >
> > (ii) In counties of the first through fourth class, the number of licensees contacted by the applicant, or the applicant's agent, must be equal to or greater than 50% of the existing restaurant liquor or eating place retail dispenser licensees in the county.
> >
> > . . . .
>
> (2) Evidence that the applicant, or the applicant's agent, has offered to purchase a restaurant liquor or eating place retail dispenser licenses in the county that are in safekeeping at the time the application is filed with the Board, including the offered and requested amounts.
>
> (3) An explanation as to why it is not economically feasible for the applicant business to pay the amount requested for an existing restaurant liquor or eating place retail dispenser license. The applicant shall provide evidence of the following factors:
>
> > (i) The applicant's capital and financial resources.
> >
> > (ii) The applicant's projected revenue and expenses for its business, as well as actual revenue and expenses if the business is currently in operation.
> >
> > (iii) Other factors the applicant considered when deciding that obtaining a liquor license in the marketplace was not economically feasible.

11

(4) A written estimation, with supporting documentation, of the expected economic benefits to the municipality if the application is granted.

40 Pa. Code § 3.105(e).

The PLCB asserts the trial court abused its discretion or committed an error of law by interpreting Section 461(b.1) of the Liquor Code and Section 3.105(e) of the PLCB's regulations regarding the exhaustion of reasonable means requirement "so that it only requires a single offer for an amount an applicant claims it can afford, even if that amount is well below the open market price, rather than a reasonable, good faith offer." PLCB's Br. at 22. We disagree.

In *Domusimplicis*, 202 A.3d at 843, 845, this Court affirmed a trial court's grant of an EDR License after the trial court credited the testimony of the applicant's agent that he had called and sent letters to existing licensees inquiring about the availability of their licenses for sale. Additionally, the agent testified he personally knew that the licenses in safekeeping were not available for sale. *Id.* at 843. Under these circumstances, we concluded it was unnecessary for the applicant to make an offer or to specify the price the applicant was willing to offer for the licenses because there were no licenses for sale. *Id.* An applicant need not make futile offers to purchase unavailable licenses. *Id.* Based on the trial court's findings, which were supported by substantial evidence, we upheld the trial court's determination that the applicant's efforts met the exhaustion of reasonable means criterion. *Id.*

Similarly, in *Myles Development Company*, the trial court found that none of the licensees the applicant reached out to were willing to sell their liquor license without also selling their business. 224 A.3d at 1127. In that case, we agreed with the trial court's conclusion that Section 3.105(e) of the PLCB's regulations did not require the applicant to purchase a separate business and additional real estate in

12

order to acquire a liquor license. *Id.* Again, we concluded that a "licensee cannot be expected to engage in an exercise in futility." *Id.*

Here, the trial court credited Counsel's testimony regarding the form letters he sent to existing licensees inquiring about the availability of their licenses for sale. Despite Counsel's numerous inquiries, Counsel received only one response. Based on Counsel's research and Applicant's financial status, Applicant made an offer expecting to initiate negotiations, but Meals immediately indicated Scalles was not interested, and gave no indication he wanted to pursue further negotiations. The PLCB's regulations require evidence that Applicant offered to purchase an available restaurant liquor license, including the offered and requested amount, as well as an explanation as to why it is not economically feasible for the applicant to pay the requested amount. *See* 40 Pa. Code § 3.105(e). Applicant complied with the PLCB's regulations by offering to purchase the license from the only party indicating an interest in selling, along with the amount offered. The other party did not respond with a requested amount, simply indicating it was not interested. Despite the lack of a requested amount, Applicant provided an explanation why it was not economically feasible for it to offer an amount closer to market price. It provided evidence of its capital and financial resources, its projected revenue and expenses, and its attempt to obtain a business loan. The trial court deemed Applicant's evidence credible, and found it offered what it could afford. We agree with the trial court that to expect Applicant to have offered more than it could afford would have been "an exercise in futility." *See* 1925(a) Op. at 15. Substantial evidence exists that Applicant could not afford the marketplace price.

Moreover, we reject the PLCB's assertion that because Applicant's offer was below the market price for a liquor license, it was unreasonable or offered in bad

faith. Neither the statute nor the regulation requires an applicant to offer the market price for a liquor license to demonstrate it "exhausted reasonable means" to secure a license. The PLCB's suggestion this is a requirement is not supported by the plain language of the Liquor Code or the PLCB's regulations. Here, the trial court concluded, based on its findings, which are supported by the record, Applicant's offer, while below market price, was based on Counsel's research and an amount Applicant could afford. The Liquor Code requires an applicant to exhaust "reasonable" means, and requiring an applicant to offer an amount beyond what it could afford to pay would be unreasonable. Additionally, the trial court did not find Applicant's offer was in "bad faith" and the record does not support such a conclusion. Accordingly, we discern no abuse of discretion or error of law committed by the trial court.

Finally, the PLCB challenges the trial court's factual finding that Applicant was unable to secure a loan or other financing to enable it to make a "legitimate offer" to purchase a license. We disagree.

The trial court may reverse a PLCB decision to deny a liquor license where the trial court's findings are supported by substantial evidence in the record. *I.B.P.O.E. of W. Mount Vernon Lodge 151 v. Pa. Liquor Control Bd.*, 969 A.2d 642, 648 (Pa. Cmwlth. 2009) (citation omitted). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Pa. State Police, Bureau of Liquor Control Enf't v. Boots & Bonnet, Inc.*, 630 A.2d 541, 543 (Pa. Cmwlth. 1993).

Here, Accountant testified about Applicant's capital and financial resources, its past revenue and expenses, and its projected revenue and expenses. Accountant's testimony was supported by his prepared financial statements. Additionally, the

14

Olveras testified about Applicant's finances and that it could not afford to offer market price for a liquor license. The Olveras both testified about their attempts to secure a business loan through two separate banks, and their denials from both banks. The Olveras' testimony was supported by financial statements from Applicant's bank accounts and a letter from F&M Bank denying Applicant's loan request. The PLCB alleges Applicant did not "use the services of an accountant, attorney or other professional in seeking a loan," but that is of no consequence as our review is simply whether substantial evidence exists to support the trial court's findings. Additionally, neither the Liquor Code nor the PLCB's regulations require an applicant to provide evidence it used specific professional services when attempting to obtain a liquor license. Accountant's testimony, supported by Applicant's financial statements, and the Olveras' testimony, supported by Applicant's bank statements and F&M's loan denial letter, constitute substantial evidence upon which the trial court could find Applicant was unable to secure a loan or other financing to enable it to make a higher offer to purchase a license. Because the trial court's findings are supported by substantial evidence, the trial court did not abuse its discretion or commit an error of law.

For these reasons, we affirm the trial court's order.

_____
STACY WALLACE, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

El Mariachi Mexican Restaurant, LLC   :
:
              v.             : No.  837 C.D. 2023
:
Pennsylvania Liquor Control Board,   :
             Appellant  :

# **O R D E R**

**AND NOW**, this 4th day of June 2024, the order of the Court of Common Pleas of Cumberland County entered on July 6, 2023, is **AFFIRMED**.

_____
STACY WALLACE, Judge